# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Tracking of
*(Identify the person, property, or object to be tracked )*

1999, blue, Saturn Series SC2 Sedan, WI license plate APD1765, VIN 1G8ZH1273XZ106796

Case No. 22-1849M(NJ)

**Matter No.: 2022R00489**

## TRACKING WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government shows there is reason to believe that the person, property, or object described above has been involved in and likely will continue to be involved in the criminal activity identified in the application, and ✓ is located in this district; is not now located in this district, but will be at execution; the activity in this district relates to domestic or international terrorism; other: ______________________________ .

I find that the affidavit(s), and any recorded testimony, establish probable cause to believe that *(check the appropriate box)* using the object installing and using a tracking device to monitor the location of the person, property, or object will satisfy the purpose set out in Fed. R. Crim. P. 41(c) for issuing a warrant.

✓ I find entry into the following vehicle or onto the following private property to be necessary without approval or knowledge of the owner, custodian, or user of the vehicle or property for installing, maintaining, and removing the tracking device: 1999 blue Saturn Series SC2 Sedan, bearing WI license plate number APD1765, VIN 1G8ZH1273XZ106796

**YOU ARE COMMANDED** to execute this warrant and begin using the object or installing the tracking device within ten days from the date of this order and may continue use for 45 days. The tracking may occur within this district or another district. To install, maintain, or remove the device, you may enter *(check boxes as appropriate)*

✓ into the vehicle described above onto the private property described above

in the daytime only *(i.e., 6:00 a.m. to 10:00 p.m.)*. at any time of day or night because good cause has been established.

Within 10 calendar days after the use of the tracking device has ended, the officer executing this warrant must both return it to United States Magistrate Judge *(name)* Hon. Nancy Joseph and — unless delayed notice is authorized below — serve a copy of the warrant on the person who, or whose property or object, was tracked.

✓ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property or object, will be tracked *(check the appropriate box)* ✓ for 30 days *(not to exceed 30)*

until, the facts justifying, the later specific date of ______________ .

Date and time issued: 11/22/2022 @ 4:23 p.m.

[signature: Nancy Joseph]
*Judge's signature*

City and state: Milwaukee, Wisconsin

Hon. Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

Case No.

**Return of Tracking Warrant With Installation**

1. Date and time tracking device installed: ______________________
2. Dates and times tracking device maintained: ______________________
3. Date and time tracking device removed: ______________________
4. The tracking device was used from *(date and time)*: ______________________

   to *(date and time)*: ______________________.

**Return of Tracking Warrant Without Installation**

1. Date warrant executed: ______________________
2. The tracking information was obtained from *(date and time)*: ______________________

   to *(date and time)*: ______________________.

**Certification**

I declare under the penalty of perjury that this return is correct and was returned along with the original warrant to the designated judge.

Date: ______________________

______________________
*Executing officer's signature*

______________________
*Printed name and title*

*Subscribed, sworn to, and returned before me this date:*

______________________ Date: ______________________

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Tracking of
*(Identify the person to be tracked or describe the object or property to be used for tracking)*
1999, blue, Saturn Series SC2 Sedan, WI license plate APD1765, VIN 1G8ZH1273XZ106796

Case No.22-1849M(NJ)

**Matter No.: 2022R00489**

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of 18 U.S.C. § 842 and 844 . Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

☑ The person, property, or object is located in this district.

☐ The person, property, or object is not now located in this district, but will be at the time of execution.

☐ The activity in this district relates to domestic or international terrorism.

☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

☐ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:

1999, blue, Saturn Series SC2 Sedan, WI license plate APD1765, VIN 1G8ZH1273XZ106796

☑ Delayed notice of 30 days (give exact ending date if more than 30 days: ________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SA Jody Keeku, ATF

*Applicant's printed name and title*

Sworn to before me and signed in my presence.

Date: 11/22/2022

*Judge's signature*

City and state: Milwaukee, Wisconsin

Hon. Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Jody Keeku, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to install and monitor an electronic tracking device to determine the locations of a vehicle more particularly described as a 1999, blue, Saturn Series SC2 Sedan bearing Wisconsin license plate number APD1765, vehicle identification number (VIN) 1G8ZH1273XZ106796 (hereafter "SUBJECT VEHICLE 1").

2. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and have been a sworn law enforcement officer since 2001. My primary duties are to investigate violent crime involving federal firearms violations, federal arson, and federal explosives violations. As part of my duties as an ATF Special Agent, I am a Certified Explosives Specialist Bomb Technician and conduct investigations involving evidence extraction from destructive devices and explosive devices. My work includes executing search warrants and conducting interviews of individuals participating in the manufacturing of explosives and assembly of destructive devices and selling of explosives without a license. In conducting these investigations, I have used a variety of investigative techniques and resources, including physical and electronic surveillance, and the use of confidential sources and informants. These individuals also seek guidance and knowledge through others who have experimented with the illegal manufacture and use of explosives and keep their processes covert and remote to evade detection of explosives production and storage.

3. I have participated in all aspects of investigations, including physical surveillance, undercover transactions, analysis of phone and financial records, and arrests of numerous

individuals who have violated federal law. Furthermore, I have attended training courses which specialized in the investigation of illegal explosives manufacturing and dealing. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used to manufacture, safeguard, and distribute illegal explosive devices. Through training and experience, I have performed countless hours of physical and digital surveillance and am aware that suspects will often take evasive action or employ methods to attempt to inhibit law enforcement's attempt to detect and monitor their illegal activities.

4. As a Special Agent, I have participated in the investigation of firearms and narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, and weapons. As a federal investigator, I have interviewed many individuals involved in firearm and drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, analysis of phone and financial records, and arrests of numerous drug traffickers. Furthermore, I have attended training courses which specialized in the investigation of narcotics trafficking and money laundering. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds.

5. I am personally involved in the investigation of the offenses discussed in this

affidavit and I am familiar with all aspects of this investigation. The statements contained in this affidavit are based on my knowledge and, in part, information provided by law enforcement officers, including (a) my personal knowledge and observations derived from participation in this investigation; (b) review of oral and written reports that I have received directly or indirectly from other law enforcement officers about this and other illegal explosive investigations; (c) discussions I personally had concerning this investigation with other experienced investigators; (d) physical surveillance by the Kenosha Special Investigations Unit and ATF, the results of which have been reported to me directly or indirectly; (e) public records; (f) review of telephone toll records, and telephone subscriber information; (g) information provided by confidential sources working for local law enforcement officers; (h) review of driver's license and automobile registration records; (i) records obtained from law enforcement databases; (j) my training and experience as an ATF Special Agent; and (k) the training and experience of other law enforcement officers involved in this investigation; (l) and the public portion of the Target Subjects' social media accounts.

6. Throughout this affidavit, reference will be made to law enforcement and/or case agents. Law enforcement and/or case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 842(a)(1) and 844(a) engaging in the business of manufacturing explosives without an ATF License; Title 18, United States Code, Section 842(a)(3)(B) distribution of explosives without an ATF license to someone who does not have an

ATF license, and Title 21, United States Code, Sections 841 and 846, distribution and conspiracy to distribute controlled substances, have been committed, are being committed, and will be committed by Melissa SIMMONS and James RUCKSTALES, and others, some of whom are not yet identified. There is also probable cause to believe that the locations of SUBJECT VEHICLE 1 will constitute evidence of those criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses and storage locations of stored explosive devices and explosive making material.

**PROBABLE CAUSE**

8. As an ATF Special Agent, your affiant has conducted investigations of violations of Title 18 United States Code, Section 842(a)(1) which makes it is unlawful to engage in the business of importing, manufacturing, or dealing explosive materials without a federal explosives license issued by ATF. Furthermore, your affiant knows that it is a violation of Title 18, United States Code, Section 842(j) for any person to store any explosive materials in a manner not in conformity with federal regulations. Such is the case when explosive materials are stored in an occupied residence or non-secure building. Further, your affiant has searched the relevant databases and found no evidence that SIMMONS or RUKSTALES has any license to manufacture, distribute, or store explosive materials.

9. Your affiant knows through training, knowledge and experience that illegal, explosive devices are often constructed by persons who obtain certain chemicals, commonly called explosive precursor chemicals, through online or mail order. In their component form, these chemicals are not considered explosive materials and thus are not regulated by ATF. However, once combined or mixed, an explosive material commonly referred to as "flash powder" can be produced. Flash powder is classified as an explosive under Title 27, Code of Federal Regulations,

Part 55, Subpart K, Section 55.201(a) and is thus subject to federal manufacturing requirements. Flash powder is also subject to federal explosives storage requirements as defined in Title 27 Code of Federal Regulations, Part 55, Subpart K. Flash powder devices can be small or large. Larger devices can blow up cars, homes, and be used to kill or maim individuals.

10. Your affiant knows that flash powder is used, by licensed persons, in the legal manufacture, distribution and use of explosives such as display fireworks. However, flash powder has also been used by unlicensed persons in the unlicensed, unregulated and unlawful manufacture of explosive devices for sale to or use by unlicensed persons in the general public. Persons who manufacture such devices place flash powder into a container such as a sealed cardboard tube. A fuse or wick is inserted into the tube which is intended to be initiated with open flame. This wick is designed to burn to the point where it reaches the explosive contained inside the tube and whereby the explosive is initiated. Once initiated, the devices can explode with significant force. Unlike lawfully manufactured "commercial" explosives, which are generally designed to be insensitive to flame, these devices are considered "flame sensitive" and thus relatively easy for persons not specifically trained in the use of explosives to initiate. Furthermore, these explosive devices are made in a clandestine manner (in homes, barns, garages, etc.) with disregard to the safety of persons who may be residing nearby. Through their unlicensed and unregulated manufacture, sale and storage, these devices are referred to as "illegal explosive devices" by ATF.

**Confidential Informant Information and Controlled Buys**

11. Beginning in or about July 2022, a Kenosha Police Department Confidential Informant (CI) met with Melissa SIMMONS at her residence located at 40404 45th Street, in the town of Wheatland, Kenosha County. The CI observed SIMMONS with items later identified as illegal explosive devices that SIMMONS had stated she manufactures and sells and has been doing

this for years. SIMMONS also sells pounds of marijuana and manufactures “marijuana butter,” which she also sells. SIMMONS is also a user of a controlled substance and CI has observed SIMMONS use marijuana weekly. SIMMONS also uses cocaine and methamphetamine. CI observed SIMMONS use one of the explosive devices at a party at her residence which caused an extremely loud audible boom and caused debris from the ground to launch into the air. SIMMONS lives on the property with her father John Rukstales (M/W, DOB 05/30/1954). John resides in the white travel trailer on the property and SIMMONS lives in the actual home on the property. SIMMONS gets the marijuana from her father, John Rukstales. James RUKSTALES (M/W, DOB 12/15/1986) recently moved into the residence upstairs. RUKSTALES moved from 7002 247th Avenue, Salem, Wisconsin. SIMMONS explained to the CI that they made the explosive devices at the 7002 247th Avenue address but have moved the manufacturing to the 40404 45th St. residence. RUKSTALES is the owner of SUBJECT VEHICLE 1 (1999, blue, Saturn Series SC2 Sedan bearing Wisconsin license plate number APD1765, vehicle identification number (VIN) 1G8ZH1273XZ106796 and lets SIMMONS use the vehicle during the week when he is working.

12. The CI continued contact with SIMMONS regarding a camera the CI had for sale that SIMMONS was interested in buying. SIMMONS offered the CI explosive devices in exchange for the camera. The CI kept in contact with SIMMONS in furtherance of developing information about the explosive devices. SIMMONS provided the CI her phone number of 205-863-7301 and CI referred to her as “Gypsey.”

13. Said CI has proved to be reliable through other investigations in Kenosha County. The CI is currently working on consideration for a pending state case. The CI has provided information and evidence through controlled purchases of narcotics that are currently charged in Kenosha County. Law Enforcement reviews all audio/video of controlled purchases that CI has

conducted and has found CI to be truthful and reliable because information provided by CI has been corroborated by other independent aspects of the investigation.

14. On September 30, 2022, the CI purchased ten (10) explosive devices and a ¼ lb. of marijuana from SIMMONS at her residence of 40404 45th Street, Town of Wheatland. Text messages were exchanged between SIMMONS and the CI prior to the purchase:

September 29:

CI: "Hey, do you have 20 Boomers on hand, without having to make more?"

SIMMONS: "Let me see what I've got and if Pops will wait to ahower after me but idk, I don't need a long shower either, I have 14 and 2 small ones."

CI: "Also since you are going to ask your dad something anyway, see if he has a qp, would need it tomorrow."

CI: "Keep the 14 for me till tomorrow, Fridays are pay day, and will have extra cash to pick them up."

SIMMONS: "I've got a qp already and will hold them till tomorrow, I've got the boomers for you un my room still"

CI: "Ok, Cool"

15. On September 30, 2022, at approximately 4:00 p.m., law enforcement set up surveillance in the area of SIMMONS's residence where the controlled purchase was to take place. Case agents provided $720.00 of U.S. currency to the CI, $170.00 for the explosive devices at $17.00/each and $550.00 for the marijuana. The CI was equipped with an audio/video recording device. The CI arrived at 40404 45th St. at approximately 4:09 p.m. and met with SIMMONS in her bedroom. The CI placed the recording device on a stable surface with a clear view of SIMMONS. Case agents could live monitor the audio recording device while the CI was with

SIMMONS. The CI told SIMMONS that there was a change and they only needed 10 devices. SIMMONS grabbed a box and counted out 10 devices and placed the devices in the box before sliding the box across the bed to the CI. She then reached into a bag next to her and pulled out a clear plastic bag containing a green leafy substance later identified as marijuana. The CI asked SIMMONS how much for the "qp" and SIMMONS stated "550." The CI then handed SIMMONS $720.00 and SIMMONS counted the money. The CI asked SIMMONS how the explosive devices are "leak tested." SIMMONS stated, "he, we double test them for leaks, there visually checked and pressure checked." "He" is reference to SIMMONS's brother James RUKSTALES. The CI left the residence and traveled to a predetermined meeting location, where law enforcement was waiting. The CI turned over 10 explosive devices to a bomb technician for testing and storage. Law enforcement reviewed the audio/video recording for accuracy.

16. The explosive devices purchased were exploited for evidence and lab submittal to ATF for explosive determination. The ATF Lab processed the samples and found that the explosive device contained a perchlorate explosive mixture labeled as "Flash Powder" which is listed on the ATF Annual List of Explosive Materials and defined as "explosive materials" in 18 Unites States Code 841(c).

17. On October 11, 2022, the CI attempted a second purchase of explosive devices from SIMMONS. From September 30 to October 11, the CI was in communication with SIMMONS via text and phone calls to her phone number 414-863-7301 to arrange to purchase more explosive devices. On October 11, 2022, the CI arranged to purchase ten (10) explosive devices from SIMMONS at her residence of 40404 45th Street, Town of Wheatland. At approximately 3:45 p.m., the CI met with law enforcement and was provided with $170.00 in U.S. currency and audio/video surveillance devices. Case agents followed the CI to SIMMONS's residence and they

observed the CI pull into the target's driveway. At approximately 4:11 p.m., the CI knocked at the door and SIMMONS's roommate, "Amy," answered the door. While monitoring the audio device, Amy could be heard stating that SIMMONS was not home. Amy then called SIMMONS and informed her that the CI was at the residence. During the phone call it was discovered that there was a misunderstanding between the CI and SIMMONS. SIMMONS told the CI that she texted the night before telling the CI she had to speak with her brother. If she hears from her brother, she could run "them" (explosive devices) out to the CI. The CI verified that there were no explosive devices at SIMMONS's residence. It was clear that SIMMONS had to obtain more explosive devices from the brother. The CI spoke with Amy while still at the residence and Amy stated SIMMONS and her father went to SIMMONS's sister's house in Kenosha for dinner and to bring her some marijuana and the CI stated, "they had to bring her weed." Law enforcement reviewed audio/video recording for accuracy.

18. On October 13, 2022, the CI purchased ten (10) explosives devices and was given a smaller explosive device for free.

October 12, 2022:

CI texted SIMMONS: "Hi, are we on for boomers tomorrow. Do you already have them"

October 13, 2022:

CI texted SIMMONS: "Are we good for four today"

SIMMONS texted CI: "Sorry. I have them in hand"

19. At approximately 3:30 p.m., case agents provided $170.00 in U.S. currency to the CI for the purchase of ten (10) explosive devices. The CI was provided with an audio/video recording device. Case agents followed the CI to SIMMONS's residence located at 40404 45th St.

Town of Wheatland, Wisconsin, and arrived at approximately 4:03 p.m. Law enforcement monitored a live audio/video recording device and could hear the CI make contact with SIMMONS in her bedroom while she was sitting on her bed. SIMMONS states, "have a seat, I got these right here." SIMMONS grabbed a grey in color, plastic bag from the floor next to the bed and placed it on the bed near the CI. SIMMONS and the CI discussed the cost and quantity. SIMMONS thought the CI wanted to purchase twenty (20) explosive devices, but the CI only wanted to purchase ten (10) at $17.00 each for $170.00. SIMMONS and the CI agreed on the ten (10) explosive devices and the CI handed SIMMONS the $170.00 in law enforcement buy money. The CI commented to SIMMONS that the explosive devices were a different color and the CI counted the explosive devices out and removed some from the bag, placing them on the bed. SIMMONS then grabbed a brown paper bag located next to the bed and removed a smaller in size explosive device and throws it onto the bed by the CI and says, "here you go." The CI stated, "a little mini one, a freebie," SIMMONS stated, "yeah." As the CI was preparing to leave, SIMMONS explained they will make explosives special order with paper towel rolls. She could not remember the price and stated if "he" (James RUKSTALES) makes more than a few, you would have to pre-pay half. SIMMONS explained the ones made with paper towel rolls are double the size of the explosive devices the CI was buying. SIMMONS also explained that the explosive devices the CI had purchased were powerful and "obliterated" a "queen ann cherry stump" they had in their yard.

20. The CI left the residence and met with case agents at a predetermined location and turned over the eleven (11) explosive devices and the audio/video recording device. Law enforcement reviewed the audio/video for accuracy.

21. On October 14, 2022, the CI gave law enforcement an image of a text message between the CI and SIMMONS. SIMMONS texted: "Ummm. it's straight, was just asking…. are

you wanting any of the boomers? My brother had me spend a couple days making more bc i told him twice he needed to." The word "boomers" is a reference to the explosive devices previously purchased by the CI from SIMMONS.

22. The CI was told by SIMMONS that RUKSTALES would be moving into the residence located at 40404 45th Street, Town of Wheatland and residing upstairs. They would make the explosive devices at that 40404 45th Street residence. The CI explained they had a conversation with SIMMONS and RUKSTALES purchases the "ingredients" to make the explosive devices online except for one ingredient that comes from St. Louis, Missouri. RUKSTALES mixes the explosive powder and SIMMONS fills the tubes and seals the ends with wax. The production of the explosive devices was occurring at 7002 247th Avenue, Salem, Wisconsin until RUKSTALES moved into the 40404 45th Street address. SIMMONS told the CI that the completed explosive devices are kept at a secondary location off-site near SIMMONS residence.

23. On November 5, 2022, at approximately 9:44 a.m., law enforcement observed SUBJECT VEHICLE 1 parked at 7002 247th Avenue, Salem, Wisconsin. RUKSTALES previously lived at this residence prior to moving in with SIMMONS. On November 7, 2022, at approximately 7:00 a.m., law enforcement observed SUBJECT VEHICLE 1 in the driveway of 40404 45th Street, Town of Wheatland, Wisconsin.



- Case agents' surveillance photo of the 1999, blue, Saturn Series SC2 Sedan bearing Wisconsin license plate number APD1765, vehicle identification number (VIN) 1G8ZH1273XZ106796 (SUBJECT VEHICLE 1).

- On November 10, 2022, law enforcement observed SUBJECT VEHICLE 1 in the driveway of 7002 247th Avenue, Salem, Wisconsin.
- On November 14, 2022, law enforcement observed SUBJECT VEHILCE 1 in the driveway of 7002 247th Avenue, Salem, Wisconsin .
- On November 17, 2022, law enforcement observed SUBJECT VEHICLE 1 in the driveway of 7002 247th Avenue, Salem, Wisconsin.
- On November 18, 2022, law enforcement observed SUBJECT VEHICLE 1 in the driveway of 7002 247th Avenue, Salem, Wisconsin.

24. Based on information obtained through physical surveillance, confidential sources

and information from other law enforcement agents, I believe SIMMONS and RUKSTALES is using SUBJECT VEHICLE 1 to further their illegal activities. Based upon my own observations, I know that SUBJECT VEHICLE 1 is presently within the Eastern District of Wisconsin. Your affiant knows that the Global Positioning System (GPS) tracking device, which is covertly placed on a criminal suspect's automobile, is equipped with a satellite radio receiver, which, when programmed, periodically records, at specified times, the latitude, longitude, date, and time of readings, and stores these readings until they are downloaded to a computer interface unit and overlaid on a computerized compact disk mapping program for analysis. Your affiant believes that the installation of the Global Positioning System (GPS) tracking device onto the 1999, blue, Saturn Series SC2 Sedan bearing Wisconsin license plate number APD1765, vehicle identification number (VIN) 1G8ZH1273XZ106796 (SUBJECT VEHICLE 1), and the monitoring thereof, will enable law enforcement officers to identify locations and associates currently unknown to law enforcement officers as to the location of the fruits of this violation are stored and/or distributed. Furthermore, your affiant believes that the installation of the Global Positioning System (GPS) tracking device has been shown to be a successful supplement to visual surveillance of the vehicle, due to the inherent risks of detection of manual or visual surveillance by the target of law enforcement personnel. The Global Positioning System (GPS) tracking device lessens the risk of visual detection by the suspect and is generally considered more reliable since visual surveillance often results in the loss of sight of the target vehicle.

25. To effectively track the movement of SUBJECT VEHICLE 1 and to decrease the chance of detection, I seek to track SUBJECT VEHICLE 1 while it is in the Eastern District of Wisconsin and elsewhere. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize installation, removal, and

maintenance of the tracking device during both daytime and nighttime hours. This authorization is essential due to the vehicle being parked in close proximity to and on the property of various residences, including 40404 45th Street Town of Wheatland, Kenosha County, SIMMONS and RUKSTALES's residence, and 7002 247th Avenue Salem, Wisconsin, RUKSTALES's previous residence that he frequents. Due to the proximity of the vehicle's parking locations to the residences, installation and removal of the tracking devices would be extremely difficult to accomplish during daytime hours without being detected. It is likely that the vehicle the affiant wishes to monitor will be taken into private areas to be loaded and unloaded; therefore, your affiant respectfully requests the court's permission to install and monitor the tracking device inside such private areas and the affiant requests permission to use the same methods to retrieve the device.

**AUTHORIZATION REQUEST**

26. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 authorizing periodic monitoring of the tracking device during both daytime and nighttime hours for a period of 45 days. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

27. It is further requested that in the event that SUBJECT VEHICLE 1 travels outside the territorial jurisdiction of the court, the order authorizes the continued monitoring of the electronic tracking devices in any jurisdiction within the United States, pursuant to 18 U.S.C. § 3117.

28. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified

because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the owner or user of SUBJECT VEHICLE 1 would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).